IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
CLAIRE RANKINS,                          No  C 04-02379 VRW

          Plaintiff,                     ORDER

     v.

JO ANNE B BARNHART, Commissioner
of Social Security

          Defendant.
_____/
```

Plaintiff Claire Rankins, acting pro se, appeals from the Social Security Administration ("SSA") decision to deny her social security disability benefits. The court now considers cross motions for summary judgment. Pl Mot (Doc #12), Def Mot (Doc #15). Based upon a review of the administrative record, the court finds that the Administrative Law Judge ("ALJ") did not provide sufficient justification for rejecting plaintiff's subjective complaints of pain. The court therefore GRANTS in part and DENIES in part plaintiff's motion and DENIES defendant's motion for summary judgment.

/

I

A

Plaintiff is forty-nine years old and has an eleventh grade education. Administrative Record ("AR") (Doc #7) at 879. She worked as an office assistant for the California State Public Utilities Commission from 1980 until April 30, 1997, the onset date of her alleged disability. AR at 879, 121. She has not held employment since that date. AR at 158, 879. She claims to be physically disabled from carpal tunnel syndrome and pain in her neck, lower back, hips, knee and hands. AR at 18, 158-63. She has also produced evidence that she suffers from depression. AR at 419, 868. Plaintiff traces her neck, back and hip pain to a collision with a file cabinet at work in December 1996. AR at 880-82.

The medical records regarding plaintiff's alleged impairments are voluminous and often conflicting. Many of the records addressing plaintiff's physical condition come from Dr Borina Dramov, a neurologist who treated plaintiff regularly from April 1995 until at least June 2003. AR at 847. According to Dr Dramov's most recent report, a Multiple Impairments Questionnaire dated June 17, 2003, plaintiff suffers from a herniated lumbar disc, lumbar radiculopathy and bilateral carpal tunnel syndrome. AR at 848. Dr Dramov has also listed plaintiff as having bilateral tenosynovitis, a cervical disc protrusion and degeneration in both knees. AR at 781. Many of Dr Dramov's reports document plaintiff's severe pain from these impairments, including lower back pain that radiates into her legs, neck pain and pain in her wrists and hands. See, for example, AR at 782-83, 848-49. From

2

January 2000 to June 2003, Dr Dramov repeatedly described plaintiff as permanently disabled. See, for example, AR at 774, 809, 852.

Plaintiff also visited a chiropractor regularly. Plaintiff's treating chiropractor, Alireza Bagherian, reported that plaintiff suffered from cervical myofascitis, cervical segmental dysfunction, carpal tunnel syndrome, thoracic segmental dysfunction, paresthesia/numbness or tingling, sacral segmental dysfunction, hip pain and knee pain. AR at 835.

Other physicians who have examined plaintiff since the onset date of her alleged disability have come to inconsistent conclusions. In October 1997, Dr William Ross, an orthopedic surgeon, diagnosed plaintiff with a chronic low back strain with radiculopathy into lower extremities and chronic bilateral hand tendinitis. AR at 414. According to Dr Ross, plaintiff had no significant limitations and could engage in "any and all work activities that are commensurate with age, training, and experience." Id. In February 1998, Dr Arthur Auerbach, an orthopedic surgeon, diagnosed plaintiff with residuals of a mild chronic low back strain and left hip bilateral trochanteric bursitis. AR at 663. Dr Auerbach found that plaintiff was able to perform her regular workload. AR at 664. In May 2001, Dr Brian Andrews, a neurosurgeon, found that plaintiff's gait was normal, that she was not a surgical candidate and that it was hard to understand physiologically why she would have radiating pain into either leg. AR at 797.

A June 1996 MRI of plaintiff's right wrist showed findings consistent with carpal tunnel syndrome. AR at 513. An August 1997 MRI of both wrists showed no evidence of carpal tunnel

3

pathology. AR at 674. A March 1999 MRI showed that plaintiff's hips were normal. AR at 768. A February 1998 MRI of the left knee showed a lesion of the medial meniscus. AR at 655. A December 1999 MRI of the lumbar spine showed a six millimeter protrusion of the L5-S1 disc. AR at 810. A March 1999 MRI of the cervical spine showed a two millimeter protrusion of the C5-6 disc. AR at 770. July 2001 nerve conduction studies revealed no evidence of radiculopathy, plexopathy or neuropathy in either lower limb. AR at 865.

In addition to this evidence of plaintiff's physical condition, the record includes the reports of several mental health professionals. In March 1996, Dr Andrew Whyman performed a psychiatric examination and found no evidence of anxiety or depression. AR at 247. In August 1997, however, plaintiff sought treatment after a suicide attempt and doctors prescribed Paxil. AR at 403, 408. Although the Paxil helped plaintiff's symptoms, plaintiff stopped taking it in 1997 or 1998. AR at 396, 887. In October 1997, Dr Michael Zizmor examined plaintiff and diagnosed her with chronic major depression, moderate, in partial remission. AR at 419. But in an October 1997 psychiatric review technique, Dr Robert E Lee found that plaintiff had no work restrictions, in part because she had responded favorably to antidepressant drugs. AR at 432. In July 2003, plaintiff visited Carol Mills, a licensed clinical social worker. AR at 868. Mills diagnosed plaintiff with depressive disorder and generalized anxiety disorder and recommended antidepressant medication. Id.

/
/

**4**

**B**

In August 1997, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments. AR at 121-23, 713-14. The SSA denied plaintiff's applications initially and on reconsideration. AR at 46, 52. After a hearing, the ALJ concluded in August 1999 that plaintiff was not disabled. AR at 83-84. Plaintiff appealed the decision to the SSA Appeals Council ("Appeals Council"). The Appeals Council granted review, vacated the decision and remanded the case with instructions to the ALJ to give further consideration to plaintiff's maximum residual functional capacity and to obtain supplemental evidence from a vocational expert. AR at 97-99.

A second ALJ held a hearing on July 29, 2003, at which plaintiff was represented by counsel. AR at 876. Plaintiff testified to numerous ambiguous pains and symptoms that she stated prevented her from being able to work. She described a sharp pinching pain in her neck. AR at 882. She also described severe pain in her lower back. AR at 882-83. Plaintiff testified that she could walk for an hour without too much pain, but she could only sit for one hour or stand for half an hour before it became too uncomfortable to continue. AR at 884-85. Plaintiff stated that she could not work as a parking lot attendant because she is sure that "a pain in [her] left leg" would "come over [her]". AR at 886. Finally, she claimed that due to carpal tunnel syndrome she had numbness, tingling and weakness in her hands that caused her to drop things. AR at 892.

Dr Louis Lesko, orthopedic surgeon, appeared as a medical expert at the hearing. Dr Lesko testified that plaintiff had

1 anomalous bones in her wrists as a result of a congenital condition
2 but that it was "questionable that [plaintiff] ever had carpal
3 tunnel syndrome". AR at 903-4.  He testified that she had a
4 degenerative and modestly protruding L5-S1 disc in her lower back.
5 AR at 904-5.  He also testified that plaintiff had a degenerative
6 tear of the posterior horn of the medial meniscus of the right
7 knee, but that this condition is commonly found in people "who are
8 asymptomatic and generally not much is required to be done about
9 it" unless the person is an athlete.  AR at 911.
10          Dr Lesko found that plaintiff had a medium level residual
11 functional capacity and her only limitation was that she could only
12 perform keyboard work for two-thirds of the day because of the
13 anomalous bones in her hands.  AR at 913.  Based on this
14 conclusion, the vocational expert, Sidney Johnson, testified that
15 plaintiff could perform her past relevant work as an office
16 assistant.  AR at 923.
17          On November 28, 2003, the ALJ issued a decision
18 concluding that plaintiff was not disabled.  AR at 22-23.  The ALJ
19 applied the five-step evaluation prescribed by the social security
20 regulations:  (1) whether the claimant is currently engaged in
21 substantial gainful activity; (2) whether the claimant has a severe
22 impairment or combination of impairments; (3) if the claimant has a
23 severe impairment, whether the claimant has a condition which meets
24 or equals a condition appearing in the Listing of Impairments, 20
25 CFR § 404, Pt 404, Subpt P, App 1; (4) if the claimant does not
26 have such a condition, whether the claimant is capable of
27 performing her past work; and (5) whether the claimant has the
28 /

residual functional capacity to perform any other work. 20 CFR § 404.1520.

The ALJ specifically found that: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset of disability; (2) plaintiff had an impairment or combination of impairments considered severe; (3) these impairments did not meet or equal any of the listed impairments; (4) plaintiff's allegations regarding her limitations were "not totally credible"; (5) careful consideration was given to the medical opinions in the record concerning the severity of plaintiff's impairments; (6) plaintiff retained the residual functional capacity to perform the exertional demands of medium work with inability to lift over twenty-five pounds frequently. Due to carpal tunnel syndrome, plaintiff can only perform keyboard tasks two-thirds of the day, but not continuously; (7) plaintiff had past relevant work as an office assistant; (8) plaintiff's impairments did not prevent her from performing her past relevant work as an office assistant; (9) plaintiff was not under a "disability" as defined in the Act at any time through the date of decision. AR at 22-23.

The Appeals Council denied plaintiff's request for review. AR at 10. Plaintiff began this action on June 16, 2004. Complaint (Doc #1).

II

The court must uphold the SSA's decision to deny benefits if it is supported by substantial evidence and is not based on legal error. <u>Andrews v Shalala</u>, 53 F3d 1035, 1039 (9th Cir 1995). Substantial evidence is "more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities. Andrews, 53 F3d at 1039.

### III

#### A

To receive benefits plaintiff must be under a disability. 42 USC § 423(a)(1)(d). Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The impairment must be of such severity that the individual "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other substantial gainful work which exists in the national economy." 42 USC § 423(d)(2)(A).

#### B

The ALJ found that plaintiff was not disabled because her depression did not rise to the level of a severe mental impairment and because her "severe" physical impairments did not preclude her from performing her past relevant work. Plaintiff, who is acting pro se, has not pointed to any specific ALJ errors that warrant reversal of the SSA's decision. Pl Mot (Doc #12). Upon its own review, the court finds that the ALJ's conclusion that plaintiff does not have a severe mental impairment is supported by the
/

8

record, but the ALJ erred in failing to give legally sufficient reasons for rejecting plaintiff's subjective complaints of pain.

1

An impairment is not severe if it does not significantly limit the claimant's ability to do basic work activities.  20 CFR § 404.1521.  In this case, medical reports from Dr Whyman and Dr Lee indicate that plaintiff's mental condition did not limit her ability to work.  AR at 247, 432.  In addition, it appears that medication helped any symptoms that plaintiff may have had.  AR at 396.  The ALJ noted that plaintiff stopped this treatment in 1997 or 1998.  AR at 19.  Finally, the ALJ provided specific reasons for rejecting Carol Mills' report, which diagnosed plaintiff with disabling depression.  The ALJ rejected the report because it did not come from an acceptable medical source, because it was suspicious in its timing and because Mills had not seen plaintiff for long enough to form a conclusive opinion.  AR at 19.

2

To find that plaintiff could perform her past relevant work the ALJ adopted the opinion of the medical expert, Dr Lesko, who testified that plaintiff's only limitation was that she could only perform keyboard work for two-thirds of the day.  The ALJ found that the reports of plaintiff's treating physician, Dr Dramov, and plaintiff's own testimony about her pain lacked credibility.

Although the opinion of a treating physician generally deserves more weight than the conflicting opinion of a non-treating physician, the ALJ may give more weight to the opinion of the non-

9

treating physician so long as the ALJ gives specific reasons that are supported by the record.  20 CFR § 404.1527(d)(2); <u>Lester v Chater</u>, 81 F3d 821, 830 (9th Cir 1996).  In this case, the ALJ provided a specific and legitimate reason for questioning the credibility of Dr Dramov's medical reports:  the Medical Board of California had placed her medical license on probation, after initially revoking it, for incompetence and repeated negligence.  AR at 20-21, 214.  This was documented in a published Medical Board Action Report that Dr Lesko presented to the ALJ at the hearing.  AR at 214, 905-8.

      The ALJ did not, however, provide legally sufficient reasons for rejecting plaintiff's subjective complaints of pain.  Once a claimant has produced objective medical evidence of an impairment that could reasonably be expected to produce the pain complained of, the ALJ must consider the complaints in determining disability.  20 CFR § 404.1529; <u>Smolen v Chater</u>, 80 F3d 1273, 1282 (9th Cir 1996).  In evaluating the credibility of the complaints the ALJ must consider:  (1) the nature, location, onset, duration, frequency, radiation and intensity of any pain; (2) precipitating and aggravating factors; (3) the type, dosage, effectiveness, and adverse side effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities.  SSR 88-13; <u>Smolen</u>, 80 F3d at 1284.  If the ALJ ultimately rejects the complaints as lacking in credibility, the ALJ must make specific findings stating clear and convincing reasons for doing so.  <u>Smolen</u>, 80 F3d at 1284.

      The ALJ may not reject the complaints "based solely on a lack of objective medical evidence to fully corroborate the alleged

severity of the pain." Bunnell v Sullivan, 947 F2d 341, 345 (9th Cir 1991). In Bunnell, an en banc opinion, the Ninth Circuit reviewed two cases in which ALJs had rejected claimants' subjective complaints of pain. Id at 342. In the first case, ALJs found that the claimant had a severe impairment but rejected his allegations of disabling pain because they were "not consistent with the medical signs and findings" and were "not justified after thorough and repeated medical evaluations." Id at 342-43. In the second case, the ALJ rejected the claimant's allegations of pain because they were not "supported by the medical evidence of record." Id at 343. The court found that the ALJs in both cases had erred by rejecting the claimants' complaints solely because the medical evidence failed to corroborate the severity of the pain alleged. Id at 348.

At the hearing in this case, Dr Lesko did not mention any of plaintiff's subjective complaints in his testimony on plaintiff's residual functional capacity. AR at 903-22. According to Dr Lesko, plaintiff did not have any limitations other than the anomalous bones in her wrists that prevent her from typing continuously. AR at 913. The vocational expert based his conclusion that plaintiff could perform her past relevant work entirely on Dr Lesko's assessment. AR at 922-23. Nothing in the vocational expert's testimony indicates that he considered any of plaintiff's pain testimony.

The ALJ found that plaintiff had several severe impairments, which necessarily includes a finding that plaintiff presented objective medical evidence of these impairments. See 20 CFR § 404.1508 (in order to prove an impairment the plaintiff must

11

present objective medical evidence). The ALJ then adopted the findings of Dr Lesko and the vocational expert as to plaintiff's residual functional capacity. The ALJ's only reference to plaintiff's pain testimony is a paragraph in which the ALJ refers to plaintiff's statements as "not completely credible, considering the differences between the statements and the information contained in medical reports." AR at 20. In support of this statement the ALJ points to several of these reports. AR at 20. First, the ALJ cites an August 1997 MRI of both wrists that showed no evidence of carpal tunnel pathology and a 1991 MRI of the hip that was negative. Id. Second, the ALJ cites Dr Andrews' surgical consultation in May 2001, which found that plaintiff's gait was normal, that she was not a surgical candidate and that it was hard to understand physiologically why she would have radiating pain into either leg. Id. Finally, the ALJ points to July 2001 nerve conduction studies that revealed no evidence for radiculopathy, plexopathy or neuropathy in either lower limb. Id.

In sum, there is no indication that the ALJ considered any of the factors set out in SSR 88-13 in evaluating plaintiff's testimony. Nor is there evidence that the medical expert or vocational expert included the testimony in their findings. The only reference to plaintiff's complaints is the ALJ's cursory finding that they were not credible because the objective medical evidence failed to support them. In effect, the ALJ's statement that plaintiff's complaints were "not completely credible, considering the differences between the statements and the information contained in medical reports" is strikingly similar to specific statements the Ninth Circuit found to be inadequate in

12

1 Bunnell. AR at 20. According to Bunnell, this is not a legally
2 sufficient reason for rejecting the testimony.

C

The final remaining issue is whether, given the ALJ's error, the court must remand for an immediate award of benefits.

The district court should credit improperly rejected evidence and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke v Barnhart, 379 F3d 587, 593 (9th Cir 2004). On the other hand, the court should remand for further administrative proceedings if after crediting the improperly rejected evidence the record is still unclear as to whether the plaintiff is disabled. See Harman v Apfel, 211 F3d 1172, 1179-80 (9th Cir 2000)(upholding remand for further proceedings where crediting improperly rejected opinion of claimant's treating physician did not establish disability as a matter of law).

In this case, remand for further administrative proceedings is appropriate because it is not clear that plaintiff would be disabled even if her testimony were credited as true. In the first place, the vocational expert did not consider any of plaintiff's pain testimony or her stated limitations in his assessment. This is not a valid reason for further administrative proceedings if the discredited testimony clearly shows an inability

13

to perform any substantial gainful work.  <u>Benecke</u>, 379 F3d at 595.  But such clarity is not present here because plaintiff's testimony regarding her limitations is ambiguous and incomplete.  For example, plaintiff testified that pain prevents her from standing for more than half an hour or sitting for more than an hour, but she did not describe the nature, severity or location of the pain that causes these limitations.  AR at 883-85.  She stated that she could not work as a parking lot attendant, a job in which she could move around, because she is sure that she would have "a pain in [her] left leg".  AR at 886.  When asked what she would do if she was sitting and got the pain, she stated that she would change her sitting position, massage the leg and take her medication.  AR at 887.  She stated that her pain medications, Vicodin and Naprosyn, do not help her.  AR at 898-900.  But she also testified that she takes the medications often and that they alleviate her pain.  Id.  This testimony is insufficient for the court to conclude that plaintiff cannot perform any substantial gainful work.  Thus, further consideration of the extent of plaintiff's pain and whether this pain renders her disabled is necessary.

IV

For the foregoing reasons, the court DENIES defendant's motion for summary judgment (Doc #15) and GRANTS in part and DENIES in part plaintiff's motion for summary judgment (Doc #12).  The ALJ's determination is vacated and the action remanded for further proceedings consistent with this order.

/

/

        **The clerk is directed to close the file and terminate all pending motions.**

        **IT IS SO ORDERED.**

 

                                        */s/*

                                **VAUGHN R WALKER**
                                **United States District Judge**